UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIELLE MENDES, as Administrator *ad Prosequendum* of the Estate of Phillip Kellerman,<br><br>   **Plaintiff,**<br><br>  v.<br><br>STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, *et al.,*<br><br>   **Defendants.** | Case No. 25–cv–01345–ESK–EAP<br><br><br>OPINION |

**KIEL, U.S.D.J.**

 **THIS MATTER** is before the Court on defendant Rutgers, the State University of New Jersey's (Rutgers)[1] motion to dismiss (ECF Nos. 34, 34–1 (Rutgers Mot. Br.)) and defendants State of New Jersey Department of Corrections, Commissioner Victoria Kuhn, and Administrators Marc Sim, Anthony Gangi, and Nicholas Calicchio's (collectively, NJDOC Defendants)[2] motion to dismiss (ECF Nos. 37, 37–1 (NJDOC Mot. Br.)) the second amended complaint (Complaint). (ECF No. 31 (Compl.)). Plaintiff Danielle Mendes filed an opposition to Rutgers's motion (ECF No. 41–2 (Opp'n to Rutgers Br.)), in

---

[1] The second amended complaint refers to this defendant as "Rutgers UCHC." Rutgers notes that University Correctional Health Care "is a non-suable constituent unit of Rutgers" improperly pled as Rutgers University (UCHC)." (Rutgers Mot. Br. p. 8.)

[2] The second amended complaint refers to "Corrections Defendants." (*See i.e.,* Compl. ¶45.) The term is not defined but appears to refer to the same defendants as NJDOC Defendants.

response to which Rutgers filed a reply. (ECF No. 42 (Rutgers Reply Br.)). Plaintiff also filed an opposition to NJDOC Defendants' motion (ECF No. 39 (Opp'n to NJDOC Br.)), in response to which NJDOC Defendants filed a reply. (ECF No. 43 (NJDOC Reply Br.)). For the following reasons, the NJDOC Defendants Motion and Rutgers Motion will be **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

Mendes brings this action on behalf of the Estate of Phillip Kellerman (Estate). Kellerman was incarcerated at Northern State Prison (Northern State), a facility operated by the New Jersey Department of Corrections (NJDOC). (Compl. ¶¶2–4, 25.) While in Northern State, Kellerman was under the care, custody and control of Sim, Gangi, Calicchio, and John Doe Corrections Officers 1-10. (*Id.* ¶¶3, 33.) Mendes also names Commissioner of NJDOC, Victoria Kuhn, as a defendant. (*Id.* ¶2.)

Mendes alleges "[t]he distribution and use of drugs within Northern State were commonplace[,]" and prison officials were aware of ongoing drug smuggling and overdose incidents at Northern State. (*Id.* ¶¶5–7.) Plaintiff alleges that Northern State correctional officers were arrested or convicted for bringing drugs and other contraband into Northern State. (*Id.* ¶¶7–11.)

Kellerman had a history of drug dependency and substance use disorder, which was known to Northern State officials and Rutgers medical personnel during his intake and screening process. (*Id.* ¶¶34–37.) Nevertheless, Kellerman was housed in an environment where drugs were readily accessible. (*Id.* ¶¶36–37.)

On January 20, 2024, Kellerman died from a drug overdose while in Northern State. (*Id.* ¶52.) Mendes alleges that drugs were widely available to prisoners because Northern State officials failed to implement adequate procedures to prevent drug possession and distribution. (*Id.* ¶¶38–44.)

Mendes alleges NJDOC, Sim, Gangi, Calicchio, and the Corrections Defendants knew that Kellerman was at a heighted risk of overdose but failed to implement policies to protect prisoners with substance use disorders.  (*Id.* ¶¶ 45–51.)

Mendes alleges that as a result of NJDOC Defendants' inadequate monitoring of Kellerman and others like him, "someone within Northern State was able to distribute a fentanyl-laced drug to him." (*Id.* ¶ 51.)  Further, Kellerman's "overdose went undetected for an unreasonable period, which delayed an adequate response and urgent life-saving measures."  (*Id.* ¶ 53.) Mendes alleges NJDOC Defendants failed to implement adequate policies and procedures, and failed to follow the policies and procedures in place for detoxing incarcerated individuals.  (*Id.* ¶¶ 54–55.)  And certain unknown defendants responded to Kellerman's cell during his overdose, but did not follow protocol to revive him.  (*Id.* ¶ 56.)  They also failed to intervene and provide Kellerman with life-saving treatment.  (*Id.*)

Rutgers provides health and behavioral medical services to Northern State.  (*Id.* ¶ 30.)  Rutgers's policy requires personnel and agents to reassess a patient's needs following each dose of Narcan, and if the patient is showing minimal or no response to the drug, then additional doses are to be administered.  (*Id.* ¶ 58.)  Mendes alleges that Rutgers failed to administer additional doses of Narcan when indicated, including to Kellerman, "showing deliberate indifference to his health and welfare which ultimately resulted in his death."  (*Id.*)  Plaintiff alleges there is "a pervasive and well-known practice … of disregarding these lifesaving protocols," and "[o]fficers and medical personnel routinely failed to respond with urgency and preparedness required under NJDOC and Rutgers health policies[.]"  (*Id.* ¶ 59.)

"No one was ever arrested or charged" in connection with the drugs that caused Kellerman's death.  (*Id.* ¶ 64.)  Mendes alleges defendants were aware of the risks posed by drugs in Northern State and prior overdose incidents but

failed to implement adequate policies, supervision, or training to prevent such harm.   (*Id.* ¶¶ 62–70.)

Mendes brings this action as the administrator *ad prosequendum* of the Estate.   (*Id.* ¶ 25.)   Count One is brought against NJDOC Defendants for failure to protect.   (*Id.* ¶¶ 72–85.)   Count Two is brought against NJDOC, Sim, Gangi, and Calicchio for failure to train, supervise, or discipline.   (*Id.* ¶¶ 86–93.)   Count Three is brought against NJDOC, Sim, Gangi, and Calicchio for state created danger.   (*Id.* ¶¶ 94–105.)   Count Four is brought against Corrections Officers John and Jane Doe 1-10, and John and Jane Doe Rutgers Agents 1-10 for failure to render adequate medical care.   (*Id.* ¶¶ 106–17.)   Count Five is against all defendants for violating the New Jersey Civil Rights Act (NJCRA).   (*Id.* ¶¶ 118–22.)   Count Six is brought against NJDOC Defendants for negligence in performance of ministerial duties under the New Jersey Tort Claims Act (NJTCA).   (*Id.* ¶¶ 123–31.)   Mendes brings Counts Seven and Eight for negligent failure to train and/or supervise, and for negligence in performance of discretionary activities under the NJTCA against NJDOC, Sim, Gangi, and Calicchio.   (*Id.* ¶¶ 132–47.)   Counts Nine and Ten are brought against all defendants for cruel and unusual punishment and deliberate indifference under NJCRA.   (*Id.* ¶¶ 148–75.)   Mendes brings Count Eleven for lost chance of survival under the NJTCA against NJDOC Defendants.   (*Id.* ¶¶ 176–85.)   Finally, Counts Twelve and Thirteen are brought against all defendants under the New Jersey Wrongful Death Act, and the New Jersey Survivor's Act.   (*Id.* ¶¶ 186–95.)

### A.   <u>Procedural History</u>

Mendes commenced this action on February 19, 2025.   (ECF No. 1.)   On April 4, 2025, Rutgers filed its first motion to dismiss, which was administratively terminated.   (ECF Nos. 10, 12.)   On April 8, 2025, Rutgers filed a pre-motion letter requesting leave to file a motion to dismiss.   (ECF No.

4

13.) I dismissed the complaint against Rutgers without prejudice for plaintiff's failure to respond to the pre-motion letter. (ECF No. 14.) Mendes, thereafter, requested that the complaint against Rutgers be reinstated. (ECF No. 21.) A pre-motion conference with all parties was held May 20, 2025. (ECF Nos. 22, 26.) Following the pre-motion conference, I entered an order granting Mendes leave to file an amended complaint. (ECF No. 26.) Mendes filed an amended complaint, and then a second amended complaint (Complaint) on June 16, 2025. (ECF No. 27; Compl.)

## II.   MOTIONS

### A.   NJDOC Defendants' Motion

NJDOC Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (NJDOC Mot. Br. pp. 7–8.) NJDOC Defendants argue that the claims against them in their official capacity should be dismissed because they are not considered "persons" amenable to suit under 42 U.S.C. § 1983 and the NJCRA. (*Id.* pp. 9–10.) They also argue that Mendes fails to plausibly assert supervisory liability claims against Kuhn, Sim, Gangi, and Calicchio. (*Id.* pp. 11–13.) As to the Fourteenth Amendment claims, NJDOC Defendants argue they should be dismissed because their alleged actions do not "shock the conscience." (*Id.* pp. 14–16.) NJDOC Defendants also assert that Mendes fails to allege deliberate indifference by NJDOC Defendants in imposing cruel and unusual punishment on Kellerman. (*Id.* pp. 17–18.) NJDOC Defendants seek dismissal of plaintiff's NJTCA claims, arguing that public entities and employees are immunized from claims under the NJTCA, and that their duties are discretionary, rather than ministerial. (*Id.* p. 18.) Regarding plaintiff's claim under the New Jersey Survivor's Act, NJDOC Defendants argue that the claim is duplicative and should be dismissed with prejudice. (*Id.* p. 19.) Finally, NJDOC Defendants argue that all

5

remaining claims are based on state statutes and common law and should be dismissed for lack of jurisdiction.   (*Id.*)

Mendes agrees that the Section 1983 and NJCRA claims against Kuhn, Sim, Gangi, and Calicchio in their official capacities should be dismissed. (Opp'n to NJDOC Br. p.7.)   But Mendes argues that these defendants can be held liable in their individual capacities, and NJDOC can be held liable in its institutional capacity.   (*Id.* p.8.)   Mendes argues that the complaint adequately alleges "a pervasive custom of staff-facilitated drug trafficking and a corresponding refusal by prison leadership to mitigate the resulting overdose risk."   (*Id.*)   She also argues that allegations against Sim, Gangi, and Calicchio establish knowing inaction required for supervisory liability, instead of reliance on *respondeat superior*.   (*Id.* pp.8–9.)   Mendes asserts the pleaded-conduct satisfies the deliberate-indifference and conscience-shocking standards.   (*Id.* pp.9–11.)   She continues to argue that prison officials are liable for denying medical care by exhibiting deliberate indifference to Kellerman's needs.   (*Id.* p.11.)   Regarding the NJTCA claims, Mendes argues there were ministerial failures which impose vicarious liability.   (*Id.* pp.12–13.)   Finally, Mendes argues that discovery is needed to obtain additional proof of specific "prosecutions and institutional failures."   (*Id.* p.13.)

In reply, NJDOC Defendants argue that "[p]laintiff has pled insufficient facts to suggest a policy of either permitting contraband, or that the issue of drugs in the facility was so prevalent contemporaneously to Kellerman's death as to justify liability—personal or otherwise—on the part of the individually-named NJDOC Defendants."   (NJDOC Reply Br. p.5.)   NJDOC Defendants again argue that Mendes has not pleaded facts that "shock the conscience." (*Id.* p.5.)   NJDOC Defendants also argue "[t]here is no allegation that the correctional staff failed to act in a manner that would satisfy an Eighth Amendment deliberate indifference claim."   (*Id.* p. 6.)

6

### B.    Rutgers's Motion

Rutgers also seeks dismissal of the Complaint under Rule 12(b)(6). (Rutgers Mot. Br. p.8.)    Rutgers argues that plaintiff failed to serve a notice of tort claim and, therefore, they must be dismissed.    (*Id*. pp.13–18.)    Regarding the NJCRA claims, Rutgers argues "[p]laintiff has failed to allege any unconstitutional policy, practice, or custom maintained by Rutgers … that caused Rutgers employees to act or fail to act" during Kellerman's death.    (*Id*. p.20.)    Rutgers argues Mendes has "pled inconsistently" by pleading that Rutgers employees failed to follow a policy but also followed "an unidentified policy, custom or practice of cruel and unusual punishment."    (*Id*. p.22.)

In her opposition, Mendes contends the Complaint "plausibly alleges a Rutgers policy or custom of withholding lifesaving overdose care."    (Opp'n to Rutgers Br. pp.6–7.)    She argues the complaint cites to lawsuits that "put Rutgers on unmistakable notice of a recurring danger" sufficient to sustain a *Monell* claim.    (*Id*. p.8.)    Mendes also states that "cost-driven delays constitute deliberate indifference" and that the complaint alleges a "sustained pattern" not mere "isolated negligence."    (*Id*. pp.8–9.)    Mendes further argues that she has identified Rutgers as the responsible institution, identified its formal Narcan protocol, and named Rutgers agents charged with implementing and supervising that protocol, who failed to do so, which is enough to plausibly allege a claim for individual liability under Section 1983.    (*Id*. pp.9–10.)    Finally, she argues Rutgers misapplies the Rule 12(b)(6) standard by disputing factual allegations in the Complaint.    (*Id*. p.10.)

In reply, Rutgers argues that the opposition brief improperly pleads allegations not contained in the second amended complaint.    (Rutgers Reply Br. pp.3–4.)    Rutgers further argues that Mendes misapplies allegations against NJDOC Defendants against Rutgers.    (*Id*. pp.5–6.)    Rutgers also argues that Mendes asserts a new legal theory, not in the Complaint, that

7

Rutgers deliberate indifference was a cost-driven delay. (*Id.* pp. 8–9.) Finally, Rutgers argues that Mendes has failed "to identify the policymaker in order to sustain a *Monell* claim against Rutgers." (*Id.* pp. 9–12.)

## III. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). "Under Rule 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

### A. NJDOC Defendants

#### 1. Claims Against NJDOC

NJDOC Defendants argue the Section 1983 and NJCRA claims must be dismissed because NJDOC is not a "person" subject to liability under Section

1983 and because the Eleventh Amendment bars damages claims against the State.   (NJDOC Mot. Br. p.9.)

Section 1983 and the NJCRA provide for civil actions for deprivation of rights by a person acting under the color of law.   *See* 42 U.S.C. § 1983; N.J.S.A. 10:6–2(c).   To make out a claim under Section 1983, a plaintiff must show "(1) that the plaintiff was deprived of a 'right or privileges secured by the Constitution or the laws of the United States' and (2) that plaintiff was deprived of his rights by a person acting under the color of state law."   *Tucker v. City of Phila.*, 679 F. Supp. 3d 127, 136 (D.N.J. 2023) (quoting *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989)).   The analyses for Section 1983 and Civil Rights Act claims are virtually identical, *Telzer v. Borough of Englewood Cliffs*, 783 F. App'x 253, 257 n. 5 (3d Cir. 2019), such that courts within this District have reviewed such claims together.   *See, e.g.*, *Carpenter v. Chard*, 492 F. Supp. 3d 321, 328 n. 1 (D.N.J. 2020); *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 121 (D.N.J. 2017).

Entities that are effectively arms of the state are not persons under Section 1983 and therefore cannot be sued for damages.   *See Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 956 n. 2 (3d Cir. 2019); *see also Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023) ("States, and state officers, if sued in their official capacities for retrospective relief, are not 'persons' subject to suit under § 1983; however, state employees in their individual capacities may be liable for damages under § 1983, even when the conduct in question is related to their official duties."); *see also Gonzalez v. N.J. Dep't of Child. and Fams.*, 545 F. Supp. 3d 178, 201, 202 (D.N.J. 2021) (finding that state agencies are immune from suit absent Eleventh Amendment waiver and that the Civil Rights Act similarly does not provide for claims against the state or arms of the state).   NJDOC has been recognized as an agency of the state, and therefore

not a person for claims under Section 1983. *See Grabow v. S. State Correctional Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989).

Absent waiver, suits for damages against states and their agencies in federal courts are barred under the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979). New Jersey has not waived immunity for §1983 claims in federal court. *See Green v. New Jersey*, 625 F. App'x 73, 75 (3d Cir. 2015) (citing *Quern*, 440 U.S. at 340–41).

Accordingly, plaintiff's Section 1983 and NJCRA claims against NJDOC, Counts One, Two, Three, Nine and Ten, will be dismissed with prejudice.

### 2. Official Capacity Claims

Mendes asserts Section 1983 and NJCRA claims against NJDOC Defendants in their official capacities and individual capacities. (Compl. ¶¶ 27–29.) NJDOC Defendants argue that the official capacity claims should be dismissed because they are barred under the Eleventh Amendment. (NJDOC Mot. Br. p. 9.) Mendes concedes that claims against Sim, Gangi, and Calicchio in their official capacities should be dismissed. (Opp'n to NJDOC Br. p. 7.) The official capacity claims will be dismissed with prejudice.

### 3. Individual Capacity Claims Against Individual NJDOC Defendants

NJDOC Defendants argue that the §1983 and NJCRA individual capacity claims should be dismissed because "they do not rely on, or substantively allege, their personal involvement." (NJDOC Mot. Br. p. 11). Since the NJCRA is interpreted analogously to Section 1983, I will address these claims together, through the lens of Section 1983. *Kaplon v. Madison Police Dep't*, No. 20–20559, 2025 WL 892884, at *4 (D.N.J. Mar. 24, 2025).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft*, 556 U.S. at 676. "Individual defendants who are policymakers may be liable

10

under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original).

### a.   Count One: Failure to Protect

Mendes alleges that NJDOC Defendants "collectively fail[ed] to take adequate measures to protect the lives and health of the incarcerated individuals in their custody, control, and care from the clear and present danger of drugs," and "those Defendants acted with deliberate indifference to a degree that shocks the conscience." (Compl. ¶ 81.)

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 676–77 (3d Cir. 2017) (per curiam) (quoting *Farmer*, 511 U.S. at 832)). To plausibly allege an Eighth Amendment conditions of confinement claim, plaintiff must provide facts showing "that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety." *Id.* at 677 (quoting *Farmer*, 511 U.S. at 834).

11

Here, Mendes alleges Northern State officials knew that drugs were widely available within the prison, were aware of prior drug smuggling incidents involving Northern State correctional officers, knew that Kellerman was at a heightened risk for overdose, yet failed to implement policies to protect incarcerated individuals with substance use disorders. (Compl. ¶¶ 5–7, 45–51, 67.) Sim, Gangi, and Calicchio were responsible for implementing policies concerning inmate safety, monitoring, contraband control, and overdose incidents. (*Id.* ¶¶ 27–29.) Mendes alleges Sim, Gangi, and Calicchio, knew that Kellerman was at a heighted risk of overdose but failed to implement policies to protect incarcerated individuals with substance use disorders, and failed to follow the policies and procedures in place for detoxing incarcerated individuals. (*Id.* ¶¶ 45–51, 54–55.) At this stage, these allegations are sufficient to plausibly claim that supervisory defendants were aware of a serious risk posed by the widespread presence of drugs within Northern State and by failing to act, exhibited deliberate indifference.

Accordingly, NJDOC Defendants' motion to dismiss Count One as to Sim, Gangi, and Calicchio in their individual capacities will be denied.[3]

### b. Count Two: Failure to Train, Supervise, Discipline

To plausibly assert a claim based on a supervisory defendant's failure to train a subordinate, plaintiff must provide sufficient facts that, if true, would show: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was

---

[3] Kuhn is only mentioned in the introductory potion of the Complaint. (*See* Compl. pp. 1, 2, 5). No factual allegations are asserted against Kuhn. Thus, Kuhn will be dismissed Kuhn from this action.

caused by the failure to implement the supervisory practice or procedure." *Womack v. Moleins*, No. 10-02932, 2015 WL 420161, at \*3 (D.N.J. Jan. 30, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014)). "[F]ailure to adequately train or supervise can only constitute deliberate indifference if the failure has caused a pattern of violations." *Id.*; *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (holding that "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train").

Here, Mendes alleges Northern State officials were aware of multiple incidents of drugs and contraband entering the prison and that corrections officers had previously been arrested or convicted for smuggling drugs into the prison. (Compl. ¶¶ 5–11.) Mendes alleges that NJDOC officials were on notice of the ongoing risk posed by drugs within Northern State and that inmates with substance use disorder, like Kellerman, were at a heighted risk of overdose but failed to implement policies to protect incarcerated individuals with substance use disorders. (*Id.* ¶¶ 45–51.)

At the motion to dismiss stage, I find the Complaint adequately alleges that the supervisory defendants were deliberately indifferent to the risk posed by the widespread presence of drugs within Northern State and failed to take reasonable steps to implement adequate policies or training to address that risk. *See Polynice v. New Jersey Dep't of Corrs.,* 19-16875, 2020 WL 2764818, \*5 (D.N.J. May 28, 2020) (denying motion to dismiss on similar grounds).

Accordingly, the motion to dismiss Count Two will be denied as to Sim, Gangi, and Calicchio in their individual capacities.

### c. Count Three: State-Created Danger

NJDOC Defendants argue that plaintiff's state-created danger claim "does not include facts or allegations that individually-named NJDOC Defendants committed any act that would shock the conscience." (NJDOC Mot. Br. p. 16.)

13

To plausibly allege a state-created danger claim, a plaintiff must provide sufficient facts that, if true, would show that "(1) "the harm ultimately caused was foreseeable and fairly direct;" (2) "a state actor acted with a degree of culpability that shocks the conscience;" (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general;" and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to the danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations omitted). "[T]hree possible standards can be used to determine whether state action shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm." *Phillips*, 515 F.3d at 241 (citing *Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006)).

As I find that Mendes has adequately pleaded deliberate indifference against the supervisory defendants, at this stage of pleading, I will allow the state-created danger claims to proceed.

### d.   NJCRA Claims

For the same reasons discussed above with respect to the Section 1983 claims, plaintiff has adequately alleged deliberate indifference and supervisory liability against Sim, Gangi, and Calicchio.   Because claims under NJCRA are interpreted analogously to Section 1983 claims, the NJDOC Defendants' motion to dismiss Counts Five, Nine, and Ten will also be denied as to Sim, Gangi, and Calicchio in their individual capacities.

14

### 4. Claims Against John and Jane Doe Corrections Officers

Mendes asserts claims against John and Jane Doe Corrections Officers who responded to Kellerman during his overdose. The NJDOC Defendants' motion to dismiss does not meaningfully address the claims against these defendants. Accordingly, I will not reach the sufficiency of the claims against John and Jane Doe Corrections Officers at this time. Those claims will proceed.

### 5. State Law Claims Against NJDOC Defendants

Plaintiff also asserts state-law claims against NJDOC Defendants. The NJDOC Defendants move to dismiss these claims on several grounds. (NJDOC Mot. Br. pp. 18–19.)

#### e. Counts Six and Eight

NJDOC Defendants contend that Count Six and Count Eight should be dismissed because they involve alleged actions that are discretionary rather than ministerial. (*Id.* p. 18.) Liability under the NJTCA "depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary." *Est. of Gonzalez v. City of Jersey City*, 255 A.3d 1175, 1185 (N.J. 2021) (quoting *Henebema v. S. Jersey Transp. Auth.*, 99 A.3d 336, 341 (N.J. 2014) (internal citations omitted)). "The distinction between ministerial and discretionary action is … fact specific and turns on whether the circumstances are thought to be such that reasonable officers in the position of the defendants could have differed about whether or how to act." *Trussel v. Monmouth Cnty.*, No. 24-00151, 2025 WL 914923, at *35 (D.N.J. Mar. 26, 2025) (quoting *Young v. Monmouth Cnty.*, No. 25-4975, 2025 WL 354447, at *8 (D.N.J. Jan. 31, 2025) (internal citations and quotations omitted)).

Accepting the allegations of the Complaint as true, NJDOC Defendants were aware of the pervasiveness of drugs in Northern State and failed to

15

implement or enforce adequate policies to protect incarcerated individuals from the risk of overdose.   (Compl. ¶¶ 45–51.)   At this stage, I cannot conclude that the alleged conduct falls within the scope of discretionary immunity under the NJTCA.   Accordingly, Counts Six and Eight will proceed.

### f.    Count Thirteen: Survivorship Action

NJDOC Defendants argue that the survivorship claim is duplicative and should be dismissed with prejudice. (NJDOC Mot. Br. p. 19.)   "[T]he survivorship statute does not create a separate cause of action."   *Endl v. New Jersey*, 5 F.Supp.3d 689, 704 (D.N.J. 2014).   But the survivorship statute does "preserve[ ] to the decedent's estate any personal cause of action that decedent would have had if he or she had survived."   *Smith v. Whitaker*, 734 A.2d 243, 249 (N.J. 1999).   Accordingly, the survivorship action survives only to the extent the underlying causes of action remain viable.

Here, Mendes has adequately alleged underlying tort claims against NJDOC Defendants that survive the motion to dismiss.   Therefore, the survivorship claim asserted in Count Thirteen may proceed to the extent it is based on those claims.

### g.    Counts Seven, Eleven, and Twelve

NJDOC Defendants argue that if the federal law claims are dismissed, then this Court lacks subject matter jurisdiction for the remaining state law claims.   (NJDOC Mot. Br. p. 19.)   But because I have found that plaintiff has sufficiently alleged claims under federal law, Counts Eleven and Twelve will not be dismissed for lack of jurisdiction.

### B.    Rutgers

Mendes asserts claims against Rutgers arising from its role in providing medical services to prisoners at Northern State Prison.

Rutgers's motion primarily challenges Mendes's ability to establish institutional liability against it.   The motion does not meaningfully address

16

the claims asserted against John and Jane Doe Rutgers Agents.   Accordingly, I limit my analysis to the claims against Rutgers.

### 1.    New Jersey Civil Rights Act Claims

Rutgers argues that the NJCRA claims against Rutgers should be dismissed as they fail to allege a policy, practice, or custom of deprivation of constitutional rights. (Rutgers Mot. Br. p.18.)   As discussed above, the NJCRA is interpreted analogously to Section 1983.   *Kaplon*, 2025 WL 892884, at *4.

Unlike NJDOC, which is an arm of the State and therefore not a "person" subject to liability §1983, *Grabow*, 726 F. Supp. at 538–39, Rutgers is a public entity that may be sued under Section 1983 and NJCRA.   *See Kovats v. Rutgers, the State Univ.*, 822 F.2d 1303, 1311–12 n. 10 (3d Cir. 1987).   To establish liability against an entity-defendant under Section 1983, a plaintiff must demonstrate that the alleged constitutional violation resulted from a policy or custom attributable to that entity.   *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).   "A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom."   *Hargrove v. City of Phila.*, 671 F. Supp. 3d 595, 605 (E.D. Pa. 2023).

NJCRA claims are premised on alleged violations of the Eighth Amendment, including cruel and unusual punishment and deliberate indifference to serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment

17

once prescribed.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle,* 429 U.S. at 104–05.)

Here, Mendes alleges that Rutgers "provide[s] medical services to incarcerated individuals at Northern State" and was "responsible for ensuring that John/Jane Doe Rutgers Agents followed those protocols and were properly supervised and trained to respond to a suspected drug overdose." (Compl. ¶ 30.) She further alleges that "Rutgers [] systematically ignored or downplayed the condition of inmates associated with drug overdosing and failed to properly provide further doses of Narcan when indicated, including to [Kellerman], showing deliberate indifference to his health and welfare which ultimately resulted in his death." (*Id.* ¶ 58.) Additionally, Mendes alleges that "[o]fficers and medical personnel routinely failed to respond with the urgency and preparedness required under NJDOC and Rutgers [] policies for which medical emergencies experienced by incarcerated individuals, particularly those with known histories of substance use, which are prevalent in prison." (*Id.* ¶ 59.) Mendes also alleges that Rutgers failed "to provide sufficient medical resources, training, and emergency preparedness," which led to delays in responding to Kellerman's overdose, "leading to his preventable death." (*Id.* ¶ 60.)

Taken as true, plaintiff's allegations are sufficient to allege that the constitutional violations asserted in Counts Five, Nine, and Ten resulted from policies or practices attributable to Rutgers.

Accordingly, Rutgers' motion to dismiss Counts Five, Nine and Ten will be denied as to Rutgers.

### 2.    <u>New Jersey Torts Claims Act</u>

Rutgers argues that plaintiff's Tort Claims Act claims should be dismissed because plaintiff did not comply with the notice procedures. (Rutgers Mot. Br. pp. 13–18.)

The Tort Claims Act states in relevant part that "no action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. §59:8–3(a). Plaintiffs must serve a notice of tort claim on the public entity within 90 days of the incident and wait the appropriate time for a response before filing a lawsuit. N.J.S.A. §59:8–8(a). The notice requirement is "a jurisdictional precondition to filing suit," *Ptaszynski v. Uwaneme*, 853 A.2d 288 (N.J. Super. Ct. App. Div. 2004) (internal quotation marks omitted), and suits that do not comply with the notice provision are "forever barred from recovering against a public entity or public employee." N.J.S.A. §59:8–8. The NJTCA applies to claims against Rutgers. *See Fuller v. Rutgers, State U.*, 381 A.2d 811, 813–15 (N.J. Super. App. Div. 1977).

The Complaint does not allege that the notice requirement was met. Rutgers submits the declarations of Rutgers Assistant Director of Risk Management and Insurance, Donna Bahnck, and Rutgers Assistant Director for the Office of Healthcare Risk and Claims Management, Peggy DeFina in support of its motion. (ECF Nos. 34–2, 34–3.) Both declare that they examined their records and did not find a tort claims notice from plaintiff. (ECF No. 34–2 ¶6; ECF No. 34–3 ¶6.)

Mendes ignores this issue entirely. Therefore, Counts Twelve and Thirteen will be dismissed with prejudice.[4]

---

[4] During the pre-motion conference of May 20, 2025 (ECF No. 25), plaintiff's counsel agreed to dismiss the state law claims against Rutgers. Plaintiff has yet to voluntarily dismiss the state law claims. Although I directed the parties to obtain the transcript of the pre-motion conference (ECF No. 26), they failed to do so.

## V.    CONCLUSION

For the foregoing reasons, NJDOC Defendants' Motion will be **GRANTED** as to Counts One, Two, Three, Nine and Ten against NJDOC, as well as  all claims against individually named defendants in their official capacities, and those claims are dismissed.    NJDOC Defendants Motion will be **DENIED** as to all counts against individually-named NJDOC Defendants in their individual capacity, which will remain.    Rutgers Defendant Motion will be **GRANTED** as to Counts Twelve and Thirteen and **DENIED** as to Counts Five Nine and Ten. Notwithstanding the above, all claims against Kuhn are dismissed.    An appropriate order accompanies this opinion.

_/s/ Edward S. Kiel_

**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: March 30, 2026